

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6535 | **DATE** | 2/25/2003 |
| **CASE TITLE** | United States of America vs. Reed, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of the United States for summary judgment [14-1] is denied. The Court *sua sponte* enters judgment in favor of the defendants. The case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 26 |
| ✓ | Mail AO 450 form. Mailed by MD. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/25/2003 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
| Plaintiff,                        ) | |
| vs.                               ) | No. 01 C 6535 |
|                                   ) | Judge Joan H. Lefkow |
| CARL REED, PATRICIA REED, CARLA   ) | |
| REED, and SHARAY REED,            ) | **DOCKETED** |
| Defendants.                       ) | FEB 2 5 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, United States of America ("United States"), brings this law suit against defendants Carl Reed, Patricia Reed, Carla Reed and Sharay Reed (collectively "Reeds"), alleging claims under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA") (Count I), and common law doctrines of payment by mistake (Count II) and unjust enrichment (Count III). The United States has moved under Rule 56, Fed. R. Civ. P., for summary judgment as to all of its claims. The court has jurisdiction pursuant to 28 U.S.C. § 1345 and 31 U.S.C. § 3730(a). For the reasons set forth below, the motion is denied.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The

party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS[1]

The United States provides student financial assistance in the form of Pell Grants to eligible students to help defray the costs of their education following high school. (Pl. L.R. 56.1 ¶ 1.) The Pell Grant program is authorized under Title IV-A, § 411 of the Higher Education Act.

---

[1] On June 24, 2002, this court granted the United States' motion to compel, ordering the Reeds to comply with requests for written discovery by July 15, 2002. On July 29, 2002, the court held a hearing on the United States' motion for a discovery sanction because the Reeds continued to not comply with requests for written discovery. Because no one for the defendants appeared at the hearing, the court granted the motion and barred the Reeds from introducing documentary evidence and from challenging the United States' documentary evidence. The Reeds were also barred from raising any affirmative defenses. Thus, the court takes the United States' documentary evidence as true.

Defendants also did not respond to the United States' Local Rule 56.1 statement of facts. Normally, if a party fails to respond to a Local Rule 56.1 statement of material facts, all such facts supported by the record are deemed admitted. The United States, however, did not abide by the requirement under Local Rule 56.2 regarding notice to *pro se* litigants opposing summary judgment. This rule requires the moving party to give *pro se* litigants specific notice about the requirements in responding to a motion for summary judgment. Since no Local Rule 56.2 notice was given to the defendants, the court will not deem the United States' Local Rule 56.1 statement to be admitted and will conduct an independent review of the entire record to determined which facts are disputed. *See Schafer v. Querry & Harrow, Ltd.*, No. 01 C 3908, 2002 WL 360651, at *2 n.1 (N.D. Ill. March 7, 2002).

(*Id.*) It is administered by the United States Department of Education and provides federal monies to eligible post-secondary students in financial need. (*Id.*) To qualify for Pell Grants, students must meet financial eligibility requirements. (Pl. L.R. 56.1 ¶ 2.) A dependent student's eligibility for grants is based on the student's financial need, which involves an evaluation of the household incomes of the parents of the student for the previous year. (*Id.*) The post-secondary institution acts as the disbursement agent for the Department of Education. (*Id.*) Pell Grants received from the Department of Education are credited to the student's account and applied against tuition costs by the post-secondary institution. (*Id.*)

A student applying for federal financial aid first submits a Federal Application for Student Financial Aid ("FAFSA") to the Department of Education's contractor, the Central Processing Center ("CPS") in Iowa. (Pl. L.R. 56.1 ¶ 3.) The CPS enters the data provided and computes an expected family contribution for that student. (*Id.*) It then generates a Student Aid Report ("SAR"), which it simultaneously sends to the school and to the student for verification by signature. (*Id.*) To verify the income information reported on the SAR, many post-secondary institutions require students to submit a Financial Aid Application signed by the student and his or her parents, accompanied by a copy of the parent's federal income tax returns. (*Id.*)

Carl and Patricia Reed reside in Carpentersville, Illinois. (Pl. L.R. 56.1 ¶ 4.) They have a daughter, Carla, who attended Southern Illinois University ("SIU") during academic years 1995-96, 1996-97, and 1997-98. (*Id.*) They also have a son, Sharay, who attended DePaul University during academic years 1995-96, 1996-97, and 1997-98. (*Id.*)

For academic year 1995-96, Carla submitted a FAFSA. (Pl. L.R. 56.1 ¶ 5.) As a result of the filing of the FAFSA, Carla was issued a SAR. (*Id.*) Carla's SAR for academic year 1995-96

states that her parent's adjusted gross income was $26,315. (*Id.*) In response to SIU's verification request, the Reeds submitted a verification worksheet along with a tax return indicating that their gross income was $26,315. In signing the worksheet, Carla and her parents certified "that all the information reported to qualify for Federal student aid is complete and correct." In academic year 1995-96, Carla received Pell Grants in the amount of $2,290. (*Id.*)

Carla submitted FAFSAs and received SARs for the 1996-97 and 1997-98 academic years. (Pl. L.R. 56.1 ¶¶ 6-7.) In both years SIU made a verification request. In 1996-97, the Reeds submitted a verification worksheet along with a tax return indicating that their gross income was $23,159. (Pl. L.R. 56.1 ¶ 7.) In 1997-98, the Reeds submitted a verification worksheet and tax return indicating that their gross income was $25,357. (Pl. L.R. 56.1 ¶ 7.) In both years Carla and her parents certified "that all the information on this form is complete and correct." (Pl. L.R. 56.1 ¶¶ 6-7.) Carla received Pell Grants in the amount of $2,470 in 1996-97 and $1,350 in 1997-98. (*Id.*)

For the academic years 1995-96, 1996-97 and 1997-98, Sharay submitted FAFSA statements and received SARs. (Pl. L.R. 56.1 ¶¶ 8-10.) Sharay's parents' adjusted gross income was listed as $26,315 in 1995-96, $23,159 in 1996-97 and $25,537 for 1997-98. (*Id.*) As part of the verification process in each academic year, Sharay and his parents certified that "all of the information on this SAR is true and complete to the best of my knowledge." (*Id.*) Sharay received Pell Grants in the amount of $2,290 in 1995-96, $2,470 in 1996-97 and $2,250 in 1997-98. (*Id.*)

Each of the defendants denies under oath that he or she submitted false documents to the Department of Education. Each further states that if the documents were false, they had no

4

knowledge of their falsity.[2]

## DISCUSSION

In Count I, the United States argues that the Reeds are liable under the FCA for false statements made to the United States in order for Carla and Sharay to receive need-based student financial aid. In Count II, in the alternative, the United States argues it may recover disbursed monies under the common law doctrine of payment by mistake of fact because such monies were wrongfully or erroneously paid. Alternatively, in Count III, the United States argues that it may recover from the Reeds under an unjust enrichment theory.

Under the FCA, it is unlawful for any person to knowingly (1) present, or cause to be presented, a false or fraudulent claim for money or property against the United States; (2) make or cause to be made a false statement to get a false claim paid or approved; (3) conspire to defraud the government by getting a false claim paid; or (4) knowingly make, use, or cause to be made or used, a false statement to conceal, avoid or decrease an obligation to the government. 31 U.S.C. § 3729(a). The FCA allows the United States to recover triple the amount of actual damages suffered, plus a civil penalty of $5,000 to $10,000 for each false statement submitted to the United States, regardless of actual damages. *Id.*

---

[2]Defendant Carl Reed stated in his affidavit "I did not, at any time from August 1994 through June 1998 or any time alleged by the government, engage[] in any behavior that I knew or reasonably understood would result in false information being given and/or acted in disregard of the truth of any matters contained in the documents." (Carl Reed Aff. ¶ 20.) Defendant Patricia Reed stated "I had no reason to be believe nor was in any manner aware of any false or misleading statements having been made or any false or misleading documents having been submitted by anyone acting for or on my behalf pertaining to financial aid or for any other unlawful or wrongful purpose." (Patricia Reed Aff. ¶ 11.) Defendant Carla Reed stated that "I had no reason to believe or was in any manner aware of any false or misleading statements or any submission of documents having been made by anyone acting for or on my behalf pertaining to the financial aid matters raised by the government in this case." (Carla Reed. Aff. ¶ 11.) Defendant Sharay Reed stated "I had no reason to believe or was in any manner made aware of any false or misleading statements having been made or any false or misleading documents having been submitted by anyone acting for or on my behalf pertaining to financial aid or for any other purpose whatsoever. (Sharay Reed Aff. ¶ 9.)

5

A person "knowingly" makes a false claim if she: (1) has actual knowledge of the information; (2) acts in a deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b); *United States ex rel. Chandler* v. *Cook County, Illinois*, 277 F.3d 969, 976 (7th Cir. 2002). No proof of specific intent is required. *Id.* A "claim" under the FCA includes any request or demand for money or property which is made to a contractor, grantee or other recipient of United States government money. 31 U.S.C. § 3729(c).

The court has scoured the record for evidence of the threshold proof here, that the documents submitted were false.[3] The only evidence presented that any documents were false is contained in an affidavit by a Special Agent with Department of Education, who states that based on a "plea agreement with defendant Marcus Washington and interviews with Truxton King, for academic years 1995-96, 1996-97 and 1997-98, to apply for student financial assistance, defendants submitted signed financial aid applications to the government using false income information." (Skonieczny Aff. ¶ 7.) Insofar as the United States relies on the affidavit to establish the falsity of any statements, that evidence is hearsay and may not be considered on this motion. *See Morrow* v. *Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998). Although the United States might have submitted the affidavits of Washington and King describing what they did with respect to the Reeds, from which a fact finder might infer that one or more of the defendants made a statement or claim that was false or made in reckless disregard for truth, it has not done so. No W-2 form or any other evidence is present that would suggest that the tax

---

[3]This issue would be the threshold proof not only for the FCA claim but also the payment by mistake and unjust enrichment claims.

returns, which form the basis of the claim, were false. There is no indication that an effort to depose the defendants was made by which admissions might have been obtained. The United States might have sought a sanction under Rule 37(b)(2)(A) to have designated facts taken to be established for purpose of this action as a result of defendants' failure to make discovery, but it did not do so. Moreover, the sanction imposed by this court on July 29, 2002, barring defendants from introducing documents does not permit this court to draw an inference that the tax information and FAFSA forms were false. Thus, there is a gaping hole in the plaintiff's proof. There is no prima facie case.

For these reasons, the court concludes that the United States has failed to demonstrate that the defendants made false statements. Because there is no genuine issue of material fact as to an essential element of the claim, the court will enter summary judgment in favor of the defendants.[4]

---

[4] Here, because the plaintiff moved for summary judgment (rather than the typical case, in which the defendant makes such a motion), it was plaintiff's responsibility to show that there was no genuine issue of material fact with respect to every essential element of proof, of which falsity is certainly one in this instance. Although the defendants have not cross-moved, "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as that losing party was on notice that she had to come forward with all of her evidence." *Pike* v. *Caldera*, 188 F.R.D. 519, 523 n.18 (S.D. Ind. 1999). That proof of each essential element of the claim must come from the plaintiff is so fundamental, there can be no doubt that the United States was on notice. Thus, it's failure to produce evidence is fatal and the court believes it appropriate to enter summary judgment *sua sponte* in favor of the defendants.

**ORDER**

The motion of the United States for summary judgment is denied [#14]. The court *sua sponte* enters judgment in favor of the defendants. The case is terminated.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 25, 2003